Good morning, your honors, Jason Carr appearing on behalf of Gail Bilyeu Appellant. This is a case about forfeiture. The pivotal concept in forfeiture, and indeed in some circumstances, the only basis upon which to defend against a forfeiture order is the concept of proceeds. The concept of proceeds is pivotal in forfeiture, and what's remarkable about this case is that no time has the government, either at the district court level or on appeal, despite the fact that it is the central issue on appeal, has the government ever identified which definition of proceeds controls in this case. And that's important because there isn't just one definition of proceeds. There are multiple definitions of proceeds in multiple statutes, and as courts have noted when they've examined this issue, that what is pivotal is the offense of conviction and what forfeiture statute is triggered by that offense of conviction and what are the parameters of the definition of proceeds that controls for that conviction. One of the central arguments that we have in this case is that, is noticed to begin with, because the government decided to apply, they gave notice that the forfeiture provision in 981 would apply, then they also said the forfeiture provision in 982 would apply, and they have different definitions of proceeds. And in particular, under 981, there's an offset for the loan amount. Now, I would like to be able to tell this Court that I think the 981 definition of proceeds applies because it's more favorable to bill you because you would explicitly get the offset under 981, but it's pretty clear that the 982 definition controls because the 982 definition explicitly refers to a mail or bank fraud case, or excuse me, a wire fraud case involving a financial institution. And all the six or seven fraudulent loan applications in this case, they all dealt and caused damage to a financial institution. So we are looking at the 982 definition of proceeds as the applicable definition. But the government, interestingly enough, and I think I finally, after all this time, kind of understand their theory and why the government never bothers to define what definition of proceeds applies and why they aren't careful about the notice they put in the forfeiture allegations. This is what the government believes. There's a statute, 28 U.S. Code Section 2461. This is a procedural statute that's been amended twice, once in 2001 and once in 2006, which is an important point because the government relies heavily on the 2006 amendments. My crime occurred before the 2006 amendments, so to the extent that their argument is based on the current 2461C, that's inapplicable. There's an ex post facto problem with that. So the formulation that's expressed in Vampire Nation, the Third Circuit case, which the government incidentally relies upon heavily, their interpretation of 2461 is what governs here because that is the interpretation before the statute was changed in 2006. And all the property, the fraudulent application and loan disbursements in this case occurred in 2004, 2005. But at any rate, what the government believes 2461 does is allow the government to not only use the civil forfeiture statute, which seems to be its ostensible purpose, 2461C allows the government to not have to file a separate civil suit when the civil forfeiture statute, which is 981, 18 U.S. Code 981, when the civil forfeiture statute allows for forfeiture, 2461, I know this is somewhat complex, 2461 allows the government to file an allegation with that civil forfeiture in a criminal case. And 2461 does say we're going to use the procedures in 853A, which is the drug forfeiture statute. What the government believes, I think, is that when 2461C says that we are going to use the procedures for determining proceeds in 853, that it incorporates not only the procedural aspects of 853, but also the substantive definitions. So, in effect, what the government believes is that 853A definitions of proceeds controls, and that's why they don't believe that the 981 offsets would apply. They think that all of the definitions and all of the substantive offense provisions of 853 are what control here. But there's no other case that has said that. And, indeed, when you look at the cases that analyze this issue, they all are very careful, especially the district court cases, where the tires hit the road, so to speak. They all are very careful to parse out what is the definition of proceeds that applies? What is the scope of that definition of proceeds? Has the government proven the factual nexus for what did the offender gain? And, as an aside, the whole underlying basis of forfeiture is to disgorge the profits that were obtained, every definition of proceeds says, that the individual obtained. So forfeiture is meant to take out of someone's hands the money that they received. But the complication, and if you look at 982, the statute will see that it defines proceeds in many different ways and many different contexts based on the crime of conviction. In my the operative definition here just says that forfeit property involved in the offense that was directly or indirectly involved, specifically proceeds the person obtained directly or indirectly. But in other provisions of the same statute, it specifically outlines broader definitions of proceeds. Sorry, where are you now? Which statute? 982, excuse me. Okay, and where are you? My estimation is the operative statute. Right. 982, what subsection? My subsection, the operative subsection of proceeds for me is 982A2, just A2, there's an A and B section. Okay, gotcha. Now, if you look at other, say if you look at 982A1, which goes to money laundering, which everybody agrees in money laundering, the government's reach of forfeiture is much broader. It says that there they can seek as proceeds any real property involved in the offense. And if you look at other subsections that talk specifically, we go down to A4 for the crimes enumerated there, it specifically says that proceeds includes the gross receipts of the offense, intangible or intangible property, real or personal, down in real or personal property, excuse me. Then if you go down to subsection A, AB, once again, gross proceeds, it says. A7, gross proceeds. In my subsection, it just says proceeds. A basic canon of statutory construction is that there is no portion of a statute that should be rendered superfluous. If proceeds means gross proceeds, as the government says here, then the other gross proceeds language that is included for other subsections, other operative definitions of proceeds would, of course, be superfluous. I have a good argument here that proceeds, in this particular context, means something besides gross proceeds. And in this case, we have to look at what is the fraudulent conduct that occurred here. Now, as an aside, as the government will say, that Newman controls this case. And there's something to that because what Newman says, in what I would submit as dicta, which I have it right here, on page 981, excuse me, 1244 of the Newman opinion. Hang up on the 980. Sorry. 1241. On Newman, page 1244, excuse me, there is an aside there where they say, for the purposes of criminal fortune, the proceeds of a fraudulently obtained loan equal the amount of the loan. And then they cite the Boulware, specific page 813 of Boulware. But if you read Boulware, it never says that at all. In Boulware, it has nothing to do with the definition of proceeds or what it applies. In Boulware, the question of How does that get us out of Newman, though? It's dicta. It was never briefed. The question in Newman was not, what is the scope of proceeds? What is the operative definition of proceeds? That was just an aside. And I briefed that in my reply brief under Miller, Brahami, and Johnson, the Albonque opinion, that there's no reasoned analysis. They cite the Boulware, which doesn't say what they say it says. There's no way you could read the pinpoint cite for Boulware and say that it says that. It just doesn't. The issue in Boulware was whether under 982 forfeiture, you're entitled to an offset. Boulware says, no, that's only a 981 forfeiture. That's all Boulware says. It's one page of analysis. And there is no opinion that I'm aware of that has specifically defined a definition of proceeds under my operative subsection of 982. And I did. I looked at the briefing in Newman, and they just didn't brief that issue. In Newman, though, they go on and say, in effect, it's kind of like this belt and suspenders thing, but to the extent it's anything other than proceeds, then that would be incorrect. So this is the correct statement they're, in effect, saying. So I'm wondering why that becomes dicta. Because the definition of how to – first of all, in Newman, they just said send it back to the district court to figure out what the proceeds are. So even that language there wasn't operative in the opinion. But that's not – it wasn't briefed. It's just not at issue. What does this definition of proceeds mean? It's just not an issue in that case. They just threw it in there. It's an aside. It's casual language. It's not operative. You have to be careful about how we write things, right? I should. No, not you. We. Well, it's a complicated issue. We debate what's dicta and what's not dicta from time to time in the court, and people have different views of that. My guess is that some people might say it was still necessary for the decision. So assuming if it's not dicta, are you stuck? No, because it still has to be proceeds that were obtained. Okay. Okay. And obtained – and the question of obtained is a big question in this case because we're dealing with degrees of separation here. My client, Bill Yu, never had mortgage funds in her dominion and control of possession, which reminds me the government, in sort of an annoying habit of theirs, they file a 28-J letter which directly responds to my reply brief citing cases that were certainly in existence when they filed the answer brief. Okay. Forget the aside. Take it out in the hall. But anyway, it's good in this case because they deride this dominion and control theory of mine, and then one of the cases they cited, Farkas, explicitly adopts that. In the district court case in Farkas, the court is looking at what funds did this individual for the question of what are proceeds, what funds did this individual have dominion and control over. That's exactly what the judge says in that case. And that's a good way to look at it because we're trying to disgorge profit here. In the mortgage fund – and so this ties into what's the scope of the definitional If it is just gross receipts, as the government seems to think, it's unclear what they think, then we have to look at, well, what's the mortgage transaction here? And we all know how a mortgage works. You never have any access to the mortgage funds themselves. That's used to fund the house. And here, what is the ultimate goal of this scheme is to flip the house in a year and acquire profit. Now, there are third-party disbursements in this case for both. I have a co-defendant that would likely be, in my estimation, what the real proceeds of this case are. She did receive, in her possession, $155,000. Childress received, from third-party disbursements from the escrow account, $188,000 approximately. There is a foreseeability analysis. Is obtaining receive different than obtain in your sentence just now? I equate them almost the same. It's true. It's obtained, yeah. It's obtained, received. Obtained, received. All right. So there's no – I don't think there is a good argument – there is not a good argument here that there are no proceeds. The question is, what are the proceeds? Is it the gross loan amount, or is it the amount of money actually obtained? And once again, the plain language of the statute supports my theory, because the language does, in fact, say that. Proceeds obtained. No matter how the actual term proceeds is interpreted in the subsection. I'd like to reserve my remaining hundred minutes, if I may. Very good. A hundred seconds. Good morning, and may it please the Court again, Robert Ellman, for the government. This issue is somewhat simpler than the prior argument would indicate. The question I think we both agree on is, what is the meaning of proceeds under 982A2A in the context of mortgage fraud? And this Court, last October, said, quote, The word proceeds appears 39 times in the Newman decision, 12 times in quotes. It is essential to the holding. The remand directs the district court to enter the forfeiture order in the proceeds amount the government requested, which is the gross proceeds and the base amount of the loans. That decision couldn't happen without determining the proceeds question. And as you read 1243 and 1244, you'll see that is the entire point of it. It is not an aside. The Court didn't remand the case and I think the words used were send it back to figure out what the proceeds are. The Court sent it back with an order to enter forfeiture in that amount unless it felt there was a problem with the proof. But here's the problem.  The proceeds at issue in Newman were proceeds under 981. No, Your Honor. There were two cases in Newman. The companion case of Tedesco was the mortgage fraud case and that was 982. I'm sorry. I was focused on Newman. That's the $1 million? Correct. Correct. Newman was the Newman? In the Newman case. Right. But then they go back to the district court, figure out if there was proof to meet that. Well, that's actually overstating it slightly, Your Honor. In the 982 mortgage case, it was $1 million. And the remand instructed the Court to enter the $1 million forfeiture order unless it had a problem with the proof or the proof was challenged. All right. So that's an evidentiary issue unrelated to the meaning of proceeds. It didn't send it back to determine what proceeds are. That was decided in the decision itself. Now, in It was an agreed amount and the question was, is there proof to support the agreed amount? Correct. And under Libretti, the Supreme Court said the Court can accept what's in the plea agreement, but if it has a problem with the evidence behind it, then it can take evidence, have a hearing, whatever it needs to do to satisfy itself about the amount. Now, Newman and Tedesco are the companion cases in the Newman opinion. Newman was decided under 981, but the Court defined proceeds under the identical analytical framework, despite the different language which Mr. Carr correctly points out between 981 and 982. And what they say is that when they're talking about 981, and this is at page 1244, and I'm quoting again, under any definition of proceeds, and particularly the broad definition applicable here, the proceeds of his bank robbery clearly equal the amount he stole, which is very significant because the forfeiture amount there was slightly over $5,000. But Newman had a co-defendant named Biggers. There were two robberies in the second bank robbery. Biggers went into the bank, held it up, came out with the cash. Newman was the getaway driver. Newman had approximately half of those proceeds. And yet the forfeiture order is for the total amount, consistent, again, with this same definition of proceeds in Newman that they apply to both. Again, their language is under any definition of proceeds. But it's specifically the amount of the loans when they're talking about 982A2A. So I don't see any way out of this unless you agree that this is a dicta somehow. But I don't see how that can be. Now, if you were writing on a clean slate, and you wouldn't be even without Newman because the Casey opinion Newman relies on says the same thing. But if you were writing on a clean slate, obtained respectfully is not the same as received. And it's certainly not the same as what a defendant personally received. If you tie this to receipt, you thwart the purpose of criminal forfeiture. And that's what the wine, women, and song principle is all about in the Casey opinion. You would actually encourage a defendant to make him or herself judgment-proof by getting rid of the proceeds if you tied it to personal receipt. In any event, what the statute says is obtained directly or indirectly. In Bilyeu's case, she was involved in every fraudulent loan, recruited straw buyers, and used the straw buyers, created fake loan applications with income and jobs that didn't exist, and got the loans for all these properties. Now, you ask, gee, did you obtain the loan? They're not going to say, no, it didn't flow through my hands. They did obtain the loan. It funded it, and the purchase was completed. And that's what obtain means in this context. It's not a distinction to say that it wasn't obtained because that distinction would have existed in Tedesco as well, and it would have existed in Warshak. And the Warshak opinion involved almost half a billion dollars of proceeds, and the individual defendant was jointly and severally liable for that. He was the CEO of a corporation permeated with fraud. And that's a 981 and 982 analysis, again, defined identically in both instances. And to say that there is still some open case law about this not being what a defendant personally received is completely wrong. We have cited cases from at least five circuits that say it's not the gross receipts, it's not apportioned among defendants. Simmons, Candelaria, Melendez, Vampire Nation, and Olguin all say that, every single one of them. And the Coleman decision is a district court case, but that says the same thing. In other words, when you get right down to it, it's the amount he stole, and that doesn't mean the amount he received. It's what the fraudsters induced the lender to give up, not what they each personally received. And any other conclusion requires you to overrule Newman. And you're not overruling an aside. You are overruling a critical holding, you know, which appears at Head Note 11. It's the analysis on page 1243 and 1244. There's no way around that. The argument you're hearing today from opposing counsel is convenient, but it's certainly not consistent with the argument that was made below. Below, they argued that there were no proceeds because the houses were the proceeds and Bilyeu didn't own them. Then at sentencing, they argued for a nominal amount of forfeiture, but Mr. Carr is conceding that Bilyeu had $150,000 of personal gain. So even under their own definition, it's not what they were arguing below. Notice was the other point raised, so I'll address that. There was no lack of notice objection below. The indictment did allege alternatively 982A2A and 981A1C through 28 U.S.C. 2461C. They are both criminal forfeiture statutes. Proceeds is analyzed the same way under both in Newman. And critically, both of those forfeiture allegations seek $2,654,000. If Ms. Bilyeu wanted to argue that it should be net profit, she had the opportunity to do that, and to some extent did. They argued about what the meaning of proceeds was, and this is before the Newman decision came down. And as I said, what they did was request nominal forfeiture. But if you have a notice problem or a due process problem, it's odd that you are taking issue with forfeiture from the outset, from the moment that preliminary order of forfeiture is filed by the government, Ms. Bilyeu is objecting to it and claims now that the reason she didn't enter into a plea agreement was because of the forfeiture that the government was seeking. That's inconsistent with lack of notice. Finally, if there really was a lack of notice, Bilyeu would have to articulate some prejudice, because the point of the forfeiture allegation notice provision is to enable the defendant to marshal her evidence so that she can refute the factual basis for the government's forfeiture. I have not heard a word about what Bilyeu would have done differently if the notice provision had been limited to 982A or 981A1C. Not a word. And that's because there was no prejudice. These defendants are held jointly and severally liable. The point is made in the reply brief that there's no finding about it being reasonably foreseeable in this case. As I mentioned before, Ms. Bilyeu actively participated in getting all of these loans. We are way beyond reasonably foreseeable. That's an argument Mr. Cawley might have been able to make, because he was creating fake documents and could at least argue that he didn't know what they were being used for. But Bilyeu was the loan officer. She was the one trying to get the loans. So it's more than foreseeable, it's actual. So joint and several liability is certainly applicable here. And that proposition is articulated in Olguin, which is one of the cases that the Newman court relies on. And finally, when you get back to dicta, what has been described as an aside in the opinion, as I said, it's not only critical, but the cite to Boulware, first of all, is correct. But it's not the only cite. Following the next sentence where the court says that in a conspiracy, the amount of the proceeds is the face amount of all the loans in the conspiracy, the court cites three cases. Olguin, McCann, and Warshak, the case that I filed as supplemental authority here, because they are all to that effect. They all say it's gross proceeds. And in every case, it's the full amount. I have nothing further unless the panel has some questions, Your Honor. Thank you. Thank you. Hold on, hold on. Wait, wait until you get up there. Is the government saying that the operative definition is 982? Because I still don't know what it is. And in the district court order, they cite 981, 982. And the fact, you know, the government knows, because I know this attorney did the briefing in Newman, that they never briefed the issue of proceeds, just like they didn't hear. The court never was dealing with the argument as how do we interpret proceeds in light of the other language in the exact same statute, where they say gross proceeds involve broader definitions of proceeds, but my operative proceeds definition does not have that language. And it's somewhat dishonest to cite Olguin, that circuit, as supporting the proposition that it means gross proceeds of the loan, I mean the gross amount of the loans, because Olguin is a drug case, and it is specifically talking about the drug definition of proceeds. And what it says in that case is that the Santos, the Supreme Court opinion about when proceeds is ambiguous, would have some force here if this wasn't a drug case. That if it was a different context with the legal market, then maybe Santos, which says if it's ambiguous, then the tie should go to eliminate construction for the defendant. If it wasn't a drug case, that would have some traction, that argument. But this is a drug case where the entire market is illegal. Therefore, we're not going to give people an offset for the wholesale cost of the drugs. Casey, the government, the case the government cited, is wholly about drug proceeds. And in Casey, in every case the government relies on, and I don't know what they're talking about, Vampire Nation does not support their position at all. Every case the government relies on, the person actually received the money. Every single one. There is not a case that I know of, other than perhaps the dicta in Newman, that talks about how it could be this amorphous amount that the person doesn't ever receive without any attempt to define the operative definition of proceeds. And with that, I can see my time is up. Thank you. Thank you, counsel. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Thomas, McKeown, Fletcher